RECEIVED
CLERK, GREENVILLE, SC

2008 MAR 26  A 11: 28

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Guy Anthony Glenn, ) | C/A No.: 8:04-CV-23071-GRA |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | (Written Opinion) |
| BellSouth TeleCommunications, Inc.; ) | |
| Communication Workers of America, ) | |
| International; and Communication ) | |
| Workers of America, Local 3702, ) | |
| ) | |
| Defendants. ) | |
| ) | |

This matter comes before the Court to review a motion for summary judgment filed by Communication Workers of America, Local 3702 (CWA Local or Defendant) on January 7, 2008. Mr. Glenn (Plaintiff) originally filed this complaint on November 23, 2004, complaining that his employer and union discriminated against him on account of his race in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e) et seq., and 42 U.S.C. §§ 1981 & 1983. The plaintiff filed a motion in opposition to summary judgment on January 25, 2008. This Court heard oral arguments on February 25, 2008. After considering all of the pleadings and oral arguments, for the reasons stated herein, this Court grants the defendant's motion.

## Factual Background

BellSouth Telecommunications, Inc. (BellSouth) originally hired the plaintiff in February of 1996 to be an hourly employee in its South Carolina Utility Operations. (Facts

at ¶ 5)[1] As a machine operator in the utility division, the Plaintiff's job responsibilities included boring holes in the ground for burying wires. (*Id.*) The plaintiff became a member of CWA Local shortly after beginning his employment with BellSouth. (*Id.* at ¶ 6)

As a bargaining unit employee represented by CWA Local, the plaintiff's employment relationship with BellSouth was governed by a collective bargaining agreement between Communication Workers of America International Union (CWA International), CWA Local, and BellSouth. Under Article 15 of the collective bargaining agreement, CWA Local agrees to represent its members through the first two steps of a three step grievance/arbitration process—after the second step in the process, CWA Local has no further input, control, or interaction with the grievance. The third step of this grievance/arbitration process is handled solely by CWA International. It is in CWA International's sole discretion, after investigating the merits of the grievance, to arbitrate a member's grievance. Separate and distinct from the bargaining agreement, BellSouth has an intra-company process to handle employee complaints. (*Id.* at ¶ 9) Neither CWA International nor CWA Local have any control of or connection with this intra-company grievance procedure.

From March 13, 2000, until January 6, 2002, the plaintiff served as a CWA Local shop steward. (*Id.* at ¶ 12) As a shop steward the plaintiff received training on investigating, writing, and handling union grievances. (*Id.* at 12) Further, the plaintiff was educated on the specifics of the collective bargaining agreement, and he was given a copy

---

[1] At the February 25, 2008 hearing the litigants stipulated to certain facts. These undisputed facts are attached to the CWA Local's January 7, 2008 Motion for Summary Judgment as Addendum Statement of Undisputed Facts. This Court will refer to this document as "Facts."

of the training guide. (*Id.*)

In the Fall of 2001 the plaintiff filed an intra-company complaint against two of his co-workers, Glenn Evans and Rodney Keaton, for racial harassment. (*Id.* at ¶ 10) Plaintiff alleges that, amongst other actions, Evans, Keaton, and other co-workers called him racially derogatory names, vandalized his truck, and complained that he was "climbing the ladder" too fast. (*Id.* at ¶ 14) It is undisputed that the plaintiff did not file a grievance related to any of these allegations with CWA Local (*Id.* at ¶ ¶ 11 &20).

As a result of the plaintiff's intra-company complaint, BellSouth suspended both Evans and Keaton for two days without pay. (*Id.* at ¶¶ 28 & 30) Both filed a grievance with CWA Local to appeal BellSouth's punishment. CWA Local processed both Keaton's and Evans' grievances through the first two steps of the contractual grievance process, and then appealed both to CWA International. (*Id.* at ¶¶ 27-30) CWA International arbitrated Keaton's claim; however, the arbitrator upheld BellSouth's decision. (*Id.* at ¶ 28) Given the arbitrator's decision and the similarity of Evans' grievance, CWA International decided not to arbitrate Evans' grievance. (*Id.* at ¶30)

Over the next three years, Plaintiff's relationship with BellSouth progressively worsened. In March 2002, BellSouth disciplined the plaintiff for being out of route. (*Id.* at ¶ 50) BellSouth counseled the plaintiff regarding his performance and attendance issues on May, 9, 2002, and October 20, 2003. On February 20, 2003, and September 26, 2003, BellSouth disciplined the plaintiff for profanity and threatening his co-workers. (*Id.*) On October 3 and October 27 of 2003, BellSouth Disciplined the plaintiff for sleeping on the job. (*Id.*) On November 14, 2003, BellSouth discharged the plaintiff for threatening his

supervisor, Daniel Rhymer. (*Id.* at ¶ 51)

On the day he was discharged, the plaintiff filed a formal grievance with CWA Local, alleging that his discharge was due to his race. (*Id.* at ¶ 31) Joe Thomas, president of CWA Local, filed the plaintiff's grievance, demanding that BellSouth reinstate the plaintiff with full back pay. (*Id.*) Thomas met with BellSouth representatives for step one and two of the contractual grievance/arbitration process. (*Id.*) When neither conference produced a satisfactory result, Thomas appealed the decision to the third step in the grievance process. On March 22, 2004, CWA International assumed all responsibility for pursuing the plaintiff's claim. (*Id.* at ¶ 33)

On September 1, 2004, CWA International representative Jerry Keene met with BellSouth about the plaintiff's grievance. (*Id.* at 34) Neither Joe Thomas nor any CWA Local agent was present at this meeting. (*Id.*) The next day Keene notified the plaintiff that CWA International would not pursue arbitration over the plaintiff's discharge grievance. (*Id.*) The immediate suit followed.

## Standard of Review

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see *Bailey v. Blue Cross & Blue Shield*, 67 F.3d 53, 56 (4th Cir. 1995). A genuine issue as to a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that

are irrelevant or unnecessary will not be counted." *Id.* at 248. However, all doubts must be resolved and inferences drawn in favor of the nonmoving party. *See Yarnevic v. Brink's, Inc.*, 102 F.3d 753, 756 (4th Cir. 1996).

## Discussion

### *Title VII and 42 U.S.C. § 1981 Claims*[2]

The plaintiff claims that the defendant violated Title VII and § 1981 by failing to provide a work place free of racial hostilities and union representation free of discrimination. "The Complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *see Mallory v. Booth Refrigeration Supply Co.*, 882 F.2d 908, 910 (4th Cir.1989). If the plaintiff fails to fulfill this burden, summary judgment is appropriate. But, if the complainant is successful, the defendant may rebut this showing by articulating a legitimate, nondiscriminatory reason for its actions. *Id.* "Once the defendant has met this burden of production, to withstand summary judgment, a plaintiff must (1) raise a genuine factual issue about the legitimacy of the defendant's proffered reason and (2) provide sufficient evidence to raise a genuine factual issue on whether the decision was based on race." *Williams v. Grimes Aerospace Co.*, 988 F.Supp. 925, 937 (D.S.C.1997) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)).

To establish a prima facie case of racial discrimination against a union, a union member must show: (1) the employer violated the collective bargaining agreement with respect to the employee; (2) the union breached its duty of fair representation by allowing

---

[2] It is proper to apply a Title VII analysis to claims brought under 42 U.S.C. § 1981. *Wright v. Reynolds*, 153 F.3d 725, 1998 WL 416731 (4th Cir. 1998) (Table).

the breach to go unrepaired; and (3) there is some evidence of racial animus among the union. *Reynolds Metal*, 212 F.Supp.2d at 539-40 (citing *Greenslade v. Chicago Sun-Times, Inc.*, 112 F.3d 853, 866 (7th Cir. 1997)). In the immediate case, the plaintiff fails to evince a prima facie case of the latter two elements.

### 2001 Grievance

Plaintiff first argues that CWA Local breached its duty to fairly represent him because CWA Local refused to file his 2001 complaint. Though Joe Thomas knew about the plaintiff's 2001 grievance against BellSouth, *Facts* at ¶ 10, it is undisputed that the plaintiff did not file a grievance in 2001 with CWA Local. *Id.* at ¶¶ 11 & 20. At the time of this complaint, as a shop steward, the plaintiff knew how to file a grievance with the union, but he chose not to. Instead, the plaintiff chose to rely on BellSouth's intra-company procedure, and it produced the results he sought—both Keaton and Evans were punished. *Id.* at ¶ 26. CWA Local could not breach its duty to fairly represent the plaintiff because the plaintiff did not ask it to represent him.

Plaintiff also argues that the events related to his 2001 intra-company grievance reveal an improper racial animus on the part of the defendant. Specifically the plaintiff argues that: (1) Evans' and Keaton's racial harassment is attributable to CWA Local; and (2) CWA Local arbitrated Keaton's grievance but chose not to arbitrate the plaintiff's grievance on account of the plaintiff's race.

First, it is undisputed that CWA Local did not endorse, authorize, or support any of its members allegedly discriminatory acts—including those of Evans and Keaton. *Id.* at ¶ 15. "Certainly a union is not responsible for every act of a [union member], simply by

virtue of his [membership]. If he acts only as an individual rather than within the authority the union has conferred, the union is absolved." *Badlam v. Reynolds Metals Co.*, 46 F.Supp.2d 187, 201-02 (N.D.N.Y.1999) (quoting *N.L.R.B. v. Local 815, Int'l Bhd. of Teamsters, Chauffers, Warehousemen and Helpers of Amer.*, 290 F.2d 99, 104 (2d Cir.1961)). Though they are union members, Evans' and Keaton's improper actions are not attributable to CWA Local and, therefore, do not constitute evidence of an improper racial animus on the part of the defendant.

Second, the fact that *CWA International* chose to arbitrate Keaton's claim but not the plaintiff's cannot establish that *CWA Local* treated Keaton and the plaintiff differently because CWA Local has no contact, control, or influence over a complainant's grievance after it hands it over to CWA International.

### 2003 Complaint

Plaintiff argues next that the defendant did not fairly represent him in his handling of 2003 claim. Plaintiff filed a grievance with the defendant union in November of 2003 after he was terminated from BellSouth. Upon receipt, the union president represented the plaintiff through the first two steps of the three step grievance/arbitration process. When BellSouth refused to settle, in accordance with the process laid out in the collective bargaining agreement, CWA Local filed it with CWA international. As of March 22, 2004—the day CWA Local handed the plaintiff's claim over to CWA International—the defendant's duty of fair dealing was complete with respect to the plaintiff's 2003 grievance.

The plaintiff has failed to demonstrate a prima facie case of racial discrimination on the part of the defendant union. Specifically, the record is devoid of any evidence that this

Court can construe as evidence of an improper racial animus or failure to deal fairly with the plaintiff. Under the undisputed facts, the defendant is entitled to judgment as matter of law for the plaintiff's Title VII claims.

### § 1983

The plaintiff also complains that the defendant union violated his constitutional rights under 42 U.S.C. § 1983. In order for § 1983 liability to attach, the defendant must be an actor of the state or agent thereof. 42 U.S.C. § 1983. It is undisputed that CWA Local is a purely private organization. *Facts* at ¶ 4. It, therefore, cannot be liable under § 1983 because it is not a state actor or agent.

### Conclusion

After a thorough review of the pleadings, oral arguments, and undisputed facts, it is clear that, as a matter of law, the plaintiff cannot sustain a claim for racial discrimination under Title VII or § 1983. Therefore, this Court finds that the defendant is entitled to summary judgment.

IT IS THEREFORE SO ORDERED THAT the CWA Local's motion for summary judgment be GRANTED.

IT IS SO ORDERED.

The Honorable William W. Wilkins, Jr.
Sitting by Designation

March 26, 2008
Greenville, South Carolina